James C. Mahan
U.S. District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| HSBC BANK USA, N.A., et al., | Case No. 2:17-CV-331 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| WILLISTON INVESTMENT GROUP LLC, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff HSBC Bank USA, National Association, as trustee on behalf of Ace Securities Corp. Home Equity Loan Trust on behalf of Registered Holders of ACE Securities Corp. Home Equity Loan Trust, Series 2006, ASAP4, Asset Backed Pass-Through Certificates' ("HSBC") first motion for summary judgment. (ECF No. 30). Defendant Williston Investment Group LLC ("Williston") filed a response (ECF No. 35), to which plaintiff replied (ECF Nos. 38, 42).

Also before the court is plaintiff's second motion for summary judgment. (ECF No. 31). Defendants Williston and Chateau Bordeaux Owner's Association ("the HOA") filed responses (ECF No. 34, 36), to which plaintiff replied (ECF Nos. 38, 41).

Also before the court is the HOA's motion for summary judgment. (ECF No. 29). Plaintiff filed a response (ECF No. 33), to which the HOA replied (ECF No. 37).

**I.     Facts**

This case involves a dispute over real property located at 1632 North Torrey Pines Drive #202, Las Vegas, Nevada, 89108 (the "property"). (ECF No. 1).

On February 28, 2003, Christian Stoldal purchased the property pursuant to a grant, bargain, sale deed. *Id.* Stoldal obtained a loan in the amount of $110,000 from American Home Mortgage ("AHM") to finance the purchase. *Id.* The loan was secured by a deed of trust recorded on April 14, 2006. *Id.*; (ECF No. 1-3). The deed of trust lists AHM as the lender and Mortgage Electronic Registration Systems, Inc. as the beneficiary "solely as a nominee for Lender and Lender's successors and assigns." (ECF No. 1-3). The covenants, conditions, and restrictions ("CC&R") governing the property contained a mortgage protection clause. (ECF No. 1 at 7-8).

On July 25, 2012, Nevada Association Services ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,867.50. (ECF No. 1-5). On September 13, 2012, NAS, acting on behalf of the HOA, recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $3,009.50. (ECF No. 1-6).

On October 17, 2012, Ocwen Loan Servicing ("Ocwen") contacted NAS and asked for a payoff ledger. (ECF No. 31). In response, NAS stated it could not "give a payoff without the borrower's authorization." *Id.* "As Stodal was in default under the note and deed of trust, Ocwen was unable to obtain his consent." *Id.* Plaintiff states that "Ocwen was ready, willing and able to satisfy the superpriority amount of the lien had NAS provided the correct pay off amount." *Id.* However, plaintiff does not allege that it or any of plaintiff's predecessors in interest tendered any amount to NAS or the HOA.

On January 24, 2013, NAS recorded a notice of foreclosure sale, stating an amount due of $4,648.17 and an anticipated sale date of February 15, 2013. (ECF No. 1-7).

On March 15, 2013, the HOA foreclosed on the property. (ECF No. 1). Williston purchased the property at the sale for $5,410. (ECF No. 1-8).

On January 15, 2014, MERS, as nominee for AHM, assigned its interest in the deed of trust to plaintiff. (ECF No. 1-4).

On February 2, 2017, plaintiff filed the underlying complaint, alleging (1) quiet title pursuant to 28 U.S.C. § 2201, NRS 30.010 *et seq.*, and NRS 40.010; (2) declaratory relief under the Fifth and Fourteenth Amendment's due process clauses; (3) quiet title under the Fifth and

Fourteenth Amendment's due process clauses; (4) preliminary and permanent injunction; and (5) unjust enrichment. (ECF No. 1).

On March 20, 2017, Williston filed its answer to plaintiff's complaint and counterclaim for quiet title/declaratory relief pursuant to NRS 40.010 *et seq.* and NRS 116.3116 *et seq.* (ECF No. 13).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving

party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

When a plaintiff's claims fail as a matter of law on a motion for summary judgment filed by one defendant, then all defendants are entitled to a final judgment in their favor on those claims, regardless of whether they joined in the motion. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).

. . .

. . .

**III.   Discussion**

As an initial matter, claim (4) of plaintiff's complaint will be dismissed without prejudice as the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

Further, the court will dismiss claim (2) of plaintiff's complaint, which requests declaratory relief. "[A] 'claim' for declaratory relief is not a substantive cause of action at all; it is merely a prayer for a remedy." *Pettit v. Fed. Nat'l Mortg. Ass'n*, no. 2:11-cv-00149-JAD-PAL, 2014 WL 584876 (D. Nev. Feb. 11, 2014); *see Wells Fargo Bank, N.A. v. SFR Invs. Pool 1, LLC*, no. 2:15-cv-02257-JCM-CWH, 2017 WL 1902158, at *4 (D. Nev. May 9, 2017) (citing *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)); *see also Centex Homes v. Everest Nat'l Ins. Co.*, no. 2:16-cv-01275-GMN-CWH, 2017 WL 4349017 (D. Nev. Sept. 29, 2017) ("[T]he Court will interpret Plaintiff's claim for declaratory relief as a request for a remedy rather than a separate cause of action . . . .").[1] As plaintiff's second cause of action requests a remedy of declaratory relief, and is not a substantive cause of action, the court will dismiss the claim to the extent it purports to create a cause of action. *See Wells Fargo*, 2017 WL 1902158, at *4.

i.  *Quiet title*

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property

---

[1] The court in *Centex* denied defendant's motion to dismiss plaintiff's claim for declaratory relief due to its interpretation of plaintiff's claim as a request for a remedy rather than a separate cause of action. 2017 WL 4349017, at *5. This court will grant defendant's motion to dismiss, but will consider the allegations within plaintiff's first and second causes of action to the extent they request the remedy of declaratory relief. The court does not see a practical difference between the two approaches.

in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for a party to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[2] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

    (b) The elapsing of the 90 days; and
    (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 1-5, 1-6, 1-7, 1-8). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

---

[3] The statute further provides as follows:

    2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

    3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

Plaintiff raises the following grounds in support of its motions for summary judgment: due process and *Bourne Valley*; rejected tender; and statutorily defective foreclosure. (ECF Nos. 30, 31).

### 1. Due process

Plaintiff argues that NRS Chapter 116 is unconstitutional under *Bourne Valley*, wherein the Ninth Circuit held that the HOA foreclosure statute is facially unconstitutional. (ECF No. 30). Plaintiff further contends that *Bourne Valley* renders any factual issues concerning actual notice irrelevant. *Id.*

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate

procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Here, plaintiff has failed to show that it did not receive proper notice. Plaintiff does not argue that it lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Accordingly, plaintiff's challenge based on due process and *Bourne Valley* fails as a matter of law.

### *2. Rejected Tender*

Plaintiff argues that Ocwen's willingness to tender the superpriority amount prior to the foreclosure sale preserved the first priority of the deed of trust. (ECF No. 31). Plaintiff asserts that "NAS did not discharge its duty of good faith as a matter of law when NAS chose to impose arbitrary requirements that prevented HSBC from tendering to NAS the superpriority amount of the lien." (ECF No. 31). Plaintiff thus maintains that Williston took title to the property subject to the deed of trust. *Id.*

The court disagrees. Neither plaintiff not plaintiff's predecessors in interest tendered an amount sufficient to satisfy the outstanding lien prior to foreclosure.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *see also 7912 Limbwood Ct. Trust*,

979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

Plaintiff asserts that evidence of tender is unnecessary in this case because "NAS made it a business practice to refuse tender of the superpriority portion of the lien." (ECF No. 31). Plaintiff claims that "[w]ithout a payoff demand from NAS, it was impossible for the lienholder to determine the amount of monthly assessments and tender the super-priority portion of the HOA lien to protect its interest." *Id.* However, plaintiff could have tendered the amount listed in the notices of delinquent assessment lien or the notice of default in order to preserve its property interest. Plaintiff does not cite any caselaw in its motion suggesting that NAS' conduct in this case constitutes a failure to act in good faith.[4]

After failing to use the legal remedies available to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property prior to foreclosure (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—plaintiff now seeks to profit from it and its predecessor in interest's failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Based on the foregoing, plaintiff has failed to sufficiently establish that its predecessor in interest tendered a sufficient amount prior to the foreclosure sale, or that tender should have been excused, so as to render Williston's title subject to the deed of trust.

---

[4] On page 11, plaintiff cites cases from California which state that "tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale." (ECF No. 31 at 11). Plaintiff has not demonstrated that imposing a tender requirement in this case would be inequitable.

James C. Mahan
U.S. District Judge

### *3. Statutorily defective foreclosure*

Plaintiff argues that the foreclosure sale was statutorily defective because the notices included additional fees and costs beyond the superpriority amount as defined by NRS 116.3116. (ECF No. 31). This argument was considered and rejected by the court in *SFR Investments*:

> U.S. Bank further complains about the content of the notice it received. It argues that due process requires specific notice indicating the amount of the superpriority piece of the lien and explaining how the beneficiary of the first deed of trust can prevent the superpriority foreclosure sale. But it appears from the record that specific lien amounts were stated in the notices, ranging from $1,149.24 when the notice of delinquency was recorded to $4,542.06 when the notice of sale was sent. The notices went to the homeowner and other junior lienholders, not just U.S. Bank, so it was appropriate to state the total amount of the lien. As U.S. Bank argues elsewhere, dues will typically comprise most, perhaps even all, of the HOA lien. See supra note 3. And from what little the record contains, nothing appears to have stopped U.S. Bank from determining the precise superpriority amount in advance of the sale or paying the entire amount and requesting a refund of the balance. *Cf. In re Medaglia*, 52 F.3d 451, 455 (2d Cir.1995) ("[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right.").

334 P.3d at 418. Accordingly, the court holds that the notices in this case did not render the foreclosure sale statutorily defective.

**IV.  Conclusion**

In light of the foregoing, plaintiff has not shown that it is entitled to judgment as a matter of law on its claim for quiet title. Conversely, defendant HOA's motion demonstrates that it is entitled to judgment as a matter of law on plaintiff's quiet title claims, as the property at issue transferred to Williston free and clear of the deed of trust.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's first motion for summary judgment (ECF No. 30) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's second motion for summary judgment (ECF No. 31) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 29) be, and the same hereby is, GRANTED, consistent with the foregoing.

DATED May 7, 2018.

_____
UNITED STATES DISTRICT JUDGE